GRIFFITH PROFITT COMPANY, a PARTNERSHIP COMPOSED OF W. O. GRIFFITH, FRED PROFFITT, WM. I. PARNELL, AND TRADING UNDER THE FIRM NAME OF GRIFFITH PROFFITT COMPANY, v. S. L. ENGLISH.

(Filed 4 December, 1929.)

1. **Quasi-Contracts A a—In this case held: plaintiff's remedy was upon implied contract.**

    Where a clerk in a store without authority from his employer, sells certain of his employer's goods for a debt personally owed by him to the purchaser or his agent, and the employer refuses to ratify the transaction and seeks to hold the purchaser liable for the purchase price: *Held*, there was no "meeting of the minds" between the purchaser and the employer, and the employer's right to recover is on an implied contract for their reasonable worth, *quantum meruit*, on the day he got the goods.

2. **Limitation of Actions E c—Where there is conflicting evidence as to time goods were gotten under implied contract the question is for jury.**

    Where in an action on an implied contract for the reasonable worth of articles received, the three-year statute of limitations will bar recovery, and where the statute is pleaded and there is conflicting evidence as to the time the articles were gotten by the defendant, the question as to whether the claim is barred by the statute is a question for the jury, and a directed verdict thereon will be held for reversible error.

APPEAL by defendant from *MacRae, J.,* at August Term, 1929, of YANCEY. New trial.

This was a civil action for the recovery of an account of $110, the price of a wagon. The action was commenced by the issuance of a summons by S. T. Bennett, justice of the peace, on 31 May, 1928, and served on defendant 9 June, 1928. An appeal was taken from the justice of the peace to the Superior Court. The defendant, S. L. English, set up the defense that the account was barred by the statute of limitations. Defendant also denied that he contracted the debt sued on, and alleged that one Roy Horton, to whom the plaintiff's clerk, Arcemus Higgins, was indebted, made the debt with the clerk, who was the agent of the plaintiff, and that it was the debt of Roy Horton, and not of this defendant; that he got the wagon from plaintiff's store under the following circumstances: Roy Horton was building a house for Arcemus Higgins, who was clerking in plaintiff's store; that Roy Horton owed defendant for some framing that went into Arcemus Higgins' house. Defendant wanted to purchase a wagon from plaintiff, and Horton told him that he could make arrangements with Higgins to get the wagon on what Higgins owed him, Horton, and he went to the store and got the wagon under these circumstances.

Horton testified: "I am the one that was building the house for Arcemus Higgins. I bought the framing to go into this house from Mr. English. Mr. English wanted some money to buy a wagon with, and I didn't have it, and he told me he was going to get it over here at Griffith Proffitt's place, and I told him I could make arrangements for him to get it from Cem (Arcemus Higgins), and give Cem credit for the amount of the wagon on the amount he was due me for building his house and let it go on this material. So he saw me again and told me he went in and spoke to Cem about getting the wagon, and he told him it would be all right if I would come in and make arrangements about it with him. So, I went into the store, and he was busy with a customer, and I just passed by him and said, 'You know what you were talking about to Louis English about that wagon; it is all right with me for you to go ahead and let him have it.' He said, 'All right,' that he would. I come back out the door and told Mr. English he could get the wagon. I remember the young man, Walter Barnes, who I was holding the team for. I spoke to Cem Higgins about this wagon again a day or two after this. I told him it was all right for him to let Mr. English have the wagon that way; that he could take credit for it on what he was due me, and that Mr. English would give me credit for it. When I told him that he said it was all right."

Plaintiffs contended that their clerk, Arcemus Higgins, had no authority to sell the wagon and pay a debt which he owed to Roy Horton on account of his building contract with him, and that the delivery of

the wagon to defendant under the circumstances was without authority, and plaintiffs have never ratified the clerk's conduct in the matter.

The first time plaintiffs gave defendant a statement of his account, with the wagon on it, for $110, was on 2 August, 1925. Defendant sent plaintiffs check for $18.70, amount of bill other than the wagon, on 17 November, 1925. Plaintiff kept the check until 13 August, 1926, and defendant paid it off with cash.

The issues submitted to the jury and their answers thereto, were as follows:

"1. Is the account sued on barred by the statute of limitations? Answer: No.

2. What amount, if any, is the plaintiffs entitled to recover of the defendant? Answer: $110 and interest."

The other necessary facts and assignments of error will be set forth in the opinion.

*R. W. Wilson for plaintiffs.*
*Watson & Fouts for defendant.*

PER CURIAM. The record discloses that the statute of limitations was plead by the defendant. The charge of the court below was as follows: "Gentlemen of the jury, there are two issues in this case for you to answer: The first is: Is the amount set out barred by the statute of limitations? The court charges you that if you believe all the evidence you will answer that issue No. The second issue is: What amount, if anything, is the plaintiff entitled to recover of the defendant? The court charges you that if you believe all the evidence you will answer that issue $110 and interest." The defendant excepted and assigned error.

The testimony of S. L. English was, in part: "Mr. Proffitt says I got the wagon the 3d of June (1925), but it was the 19th day of May (1925). I know I got it the 19th of May, for my record here on my book shows it, and Roy Horton credited on the 19th of May for $110. I got the wagon before I finished putting the lumber down. I finished on the 23d of May. I hauled part of the lumber with the new wagon. Walter Barnes went into the store with me when I went in to see Higgins about letting me have the wagon."

The action was commenced on 31 May, 1928. The defendant, English, testified that he got the wagon on 19 May, 1925. According to his testimony the account for the wagon, $110, would be barred by the statute of limitations, as the suit was brought after three years. C. S., 441. There was no "meeting of the minds" between plaintiffs and defendant, hence no express contract. The plaintiffs did not authorize and refused to ratify the transaction between their clerk, Arcemus Higgins, Roy

Horton and defendant, therefore defendant having gotten plaintiff's wagon and kept it and used it, there was an implied contract for money had and received, and he owed what it was reasonably worth, *quantum meruit*, on the day he got it. Defendant is liable from the day of his enrichment—getting the wagon—from his testimony 19 May, 1925. *Cole v. Wagner*, 197 N. C., 692.

This is a matter for the jury, the probative force was for them.. For the reasons given, there must be a

New trial.